## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-62278-CIV-ROSENBAUM/SELTZER

RAYMOND HAYDEN,

        Plaintiff,

v.

BROWARD COUNTY, TOWN OF MEDLEY,
CITY OF NORTH MIAMI BEACH, BROWARD
COUNTY SHERIFF, MEDLEY POLICE
DEPARTMENT, NORTH MIAMI BEACH
POLICE DEPARTMENT, JOEL CHADES,
ARTURO JINETE, GREGORY TAMBURO,
HUMBERTO SUAREZ, U.S. DEPARTMENT
OF THE TREASURY, and UNITED STATES OF
AMERICA,

        Defendants.

_____/

### ORDER ON MOTIONS TO DISMISS

This matter is before the Court upon the Motions to Dismiss filed by all Defendants in this case. D.E. 8; D.E. 25; D.E. 31; D.E. 32; D.E. 35; D.E. 38; D.E. 41. The Court has considered the motions, the parties' briefs, and the Complaint and is otherwise fully advised in this matter. For the reasons explained below, the Court grants Defendants' dismissal motions.

### I. FACTUAL BACKGROUND

Plaintiff alleges the following facts, which are taken as true for the purpose of analyzing Defendants' respective motions to dismiss. On June 16, 2009, the "Money Laundering Task Force," a criminal task force organized under the auspices of the United States Internal Revenue Service ("IRS"), engaged in an undercover operation in Broward County, Florida. D.E. 1, ¶¶ 27, 31. Joel Chades, an officer with the Medley Police Department and member of the task force, parked his

vehicle in the driveway of an abandoned house in the Shangri-La at Woodmont housing community. *Id.* ¶¶ 28, 31.  A resident of the community noticed Chades had been parked in the same spot for approximately ninety minutes and placed a call to police requesting their assistance.  *Id.* ¶ 32.  An officer responded and confirmed that Chades was an undercover law-enforcement officer, but no one ever informed the resident that Chades's presence had been cleared.  *Id.* ¶ 34.  The resident then contacted Plaintiff Hayden, who was the president of the community homeowners' association, and asked him to investigate the situation.  *Id.*

Hayden approached Chades's vehicle and inquired about Chades's identity. *Id.* ¶ 36.  Chades was dressed in plain clothes with nothing visibly identifying him as law enforcement.  *Id.*  ¶ 38.  In response to Hayden's inquiry, Chades produced his IRS identification.  *Id.* ¶ 39.  Hayden believed that the IRS identification "looked bogus" and remained skeptical that Chades was actually a law-enforcement officer.  *Id.*  Hayden does not allege, however, that he communicated his skepticism or his concerns about the IRS identification to Chades.

Chades then summoned Humberto Suarez, a Broward County Sheriff's Deputy and alleged task-force member,[1] on his radio.  *Id.* ¶ 40.  Shortly thereafter, Suarez, Arturo Jinete (a Medley police officer and task-force member), and Gregory Tamburo (a North Miami Beach police officer and task-force member) arrived on the scene.  *Id.*  Hayden does not allege that these individuals identified themselves to him or that he inquired about their identities.  Nevertheless, Hayden was skeptical that Suarez, Jinete, or Tamburo were law-enforcement officers.  *Id.*  Hayden made a call to 911 asking that a marked unit come to the scene and confirm or deny that the individuals were undercover law-

---

[1] The United States Attorney has certified that Suarez was not actually a member of the IRS task force.  D.E. 42-1.

enforcement personnel.  *Id.* ¶ 41.

From the moment Hayden initially approached Chades, Hayden, who was licensed by the State of Florida to carry a concealed weapon, was wearing a fanny pack that contained a concealed firearm.  *Id.* ¶ 36.  Although Hayden does not allege that he told any of the officers that he was carrying a concealed weapon, at some point, Suarez asked Hayden to relinquish the fanny pack containing the firearm.  *Id.* ¶ 42.  Hayden asserts that the officers did not wait for him to comply with Suarez's request and that they did not wait for uniformed officers to arrive but, instead, "they beat Plaintiff HAYDEN to the ground and secured the pouch."  *Id.* ¶ 43.

Some time after the fanny pack was secured, marked Broward Sheriff's Office deputies arrived on the scene.  *Id.* ¶ 45.  Suarez then issued a Notice to Appear to Hayden, charging him with resisting an officer without violence, in violation of Section 843.02, Fla. Stat.  *Id.* ¶¶ 46, 48.  Hayden was not taken into custody.

Hayden alleges that Chades, Suarez, Tamburo, and Jinete "pressed" the State Attorney to prosecute the charge against him.  *Id.* ¶ 49.  The state entered a *nolle prosequi* on April 6, 2010.  *Id.* ¶ 50.

## II. PROCEDURAL BACKGROUND

Plaintiff filed a thirty-six-count Complaint against Defendants on November 19, 2012.  *Id.* Counts I, X, XIX, and XXVIII assert claims against the individual officers under 42 U.S.C. § 1983 for constitutional violations carried out in their capacities as state law-enforcement officers.  Counts II, XI, XX, and XXIX allege claims against the individual officers in their capacities as federal task-force members under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403

U.S. 388 (1971).[2]  In each of these eight counts, Plaintiff contends that the individual Defendants violated his constitutional rights by

> a. Depriving Plaintiff of the due process of law by withholding and failing disclose exculpatory and/or pertinent and relevant evidence, chiefly that Plaintiff did not know that the law enforcement Defendants were in fact law enforcement officers at the time of Plaintiff's purported resisting;
>
> b. Utilizing excessive force in seizing, detaining and/or arresting Plaintiff;
>
> c. By wrongfully and falsely seizing, detaining and arresting Plaintiff against his will although he had not committed the crime alleged, thus depriving Plaintiff of his liberty; and/or
>
> d. Persisting in the malicious prosecution of Plaintiff.

D.E. 1, ¶¶ 55, 60, 125, 130, 195, 200, 265, 270.

In Counts III, XII, XXI, and XXX, Plaintiff makes common-law false-arrest and false-imprisonment claims against the individual Defendants.  Counts IV and XIII levy common-law false-arrest and false-imprisonment claims against the Medley Police Department, apparently on a *respondeat superior* theory, for the actions of Chades and Jinete, respectively.  Counts V and XIV assert the same claims against the Town of Medley.  Counts XXII and XXIII plead similar claims against the North Miami Beach Police Department and the City of North Miami Beach, respectively, based on Tamburo's conduct.  Counts XXXI and XXXII make the same claim against Broward

---

[2] In actuality, Plaintiff also asserts his federal-officer claims under § 1983.  However, § 1983 claims apply only to individuals acting under color of state law, while *Bivens* claims apply to individuals acting under color of federal law.  *See* 42 U.S.C. § 1983; *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1993).  Nevertheless, because the substantive law under § 1983 and *Bivens* is generally the same, *see Topping v. U.S. Dep't of Ed.*, 510 F. App'x 816, 818 (11th Cir. 2013) (citations omitted), the Court treats Plaintiff's claims against Defendants as federal officers as though they were pled under *Bivens*.

4

County Sheriff Scott J. Israel, in his official capacity, and Broward County, respectively, for Suarez's actions.

Counts VI, XV, XXIV, and XXXIII assert common-law malicious-prosecution claims against the individual Defendants for their conduct as state officers. Counts VII, XVI, XXV, and XXXIV set forth common-law malicious-prosecution claims against the individual Defendants based on their conduct as federal law-enforcement officers. Counts VIII, XVII, XXVI, and XXXV make common-law malicious-prosecution claims against the United States Department of the Treasury based on the respective individual Defendants' conduct as federal officers, while Counts IX, XVIII, XXVII, and XXXVI assert the same claims against the United States directly.

Each of the Defendants has moved to dismiss all of the claims on a variety of grounds.[3] In the course of briefing these motions, Plaintiff has conceded that some counts should be dismissed. *See* D.E. 46 at 3; D.E. 47 at 4; D.E. 55 at 3. Accordingly, the Court grants Defendants' motions with respect to Counts IV, VIII, XIII, XVII, XXII, XXVI, and XXXV. The Medley Police Department, the North Miami Police Department, and the United States Department of the Treasury are dismissed from this lawsuit. Additionally, Plaintiff concedes that his claims for punitive damages against the Town of Medley, the City of North Miami Beach, and the Broward County Sheriff are barred by Florida law. D.E. 46 at 8-9; D.E. 47 at 20; D.E. 57 at 15; *see* Fla. Stat. § 768.28(5).

---

[3] The relevant motions include the following: D.E. 8 (Broward County); D.E. 25 (Suarez); D.E. 31 (Chades, Jinete, and Tamburo); D.E. 32 (United States and the Treasury Department); D.E. 35 (the City of North Miami Beach and the North Miami Beach Police Department); D.E. 38 (the Town of Medley and the Medley Police Department); D.E. 41 (Broward County Sheriff).

### III. LEGAL STANDARDS

#### A. Applicable Standard on a Motion to Dismiss Under Rule 12(b)(6), Fed. R. Civ. P.

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d

1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Applicable Standards for Qualified Immunity

Qualified immunity protects government officials who perform discretionary functions by shielding them from civil liability as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  The protection applies "regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).

Not only does qualified immunity provide protection from liability, but it also endows officials with protection from suit. *Lee*, 284 F.3d at 1194 (citation omitted).  Therefore, a court must ascertain the validity of a qualified-immunity defense "as early in the lawsuit as possible."  *Id.*  To obtain qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority when the alleged violation occurred.  *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).  If the defendant satisfies this requirement, the plaintiff must demonstrate that qualified immunity is inappropriate. *Id.*  To determine whether qualified immunity exists, a court

must evaluate whether a plaintiff has alleged a violation of a constitutional right and whether the right at issue was clearly established at the time of the official's alleged conduct.[4]  *See, e.g., Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010).  If no constitutional violation has been alleged or the allegedly violated right was not clearly established, the government official is entitled to qualified immunity.  *See Pearson*, 555 U.S. at 232.

## III. DISCUSSION

### A.  *Plaintiff's Constitutional Claims*

As noted above, Plaintiff has alleged eight constitutional counts against Chades, Jinete, Tamburo, and Suarez: one § 1983 claim and one *Bivens* claim against each of the four individual Defendants for their conduct in their capacities as state law-enforcement officers and federal task-force members, respectively.[5]  Each of the eight counts includes the same four claims: a due-process

---

[4] A court is no longer required to conduct these inquiries in a particular sequence. *Pearson*, 555 U.S. at 227.

[5] Plaintiff points out that while individual defendants Chades, Jinete, and Tamburo have conceded their membership on the federal task force means that they were acting within the scope of federal employment, these individual defendants have not disputed Plaintiff's contention that they were *also* acting within the scope of their state duties during the events in question.  D.E. 52 at 5; *see also* D.E. 31 at 4 n.2.  Nor has Suarez addressed the issue.  *See* D.E. 25.  Nevertheless, because Plaintiff's § 1983 and *Bivens* claims are identical and the applicable law is the same in both instances, the Court resolves all the constitutional claims here without needing to reach the dual-employment issue.

Moreover, to the extent that Plaintiff's other claims are based on a dual-employment argument, the certification of federal employment does not necessarily preclude *concurrent* state employment.  *See Guzman v. United States*, 2013 WL 543343, at *10 (S.D.N.Y. Feb. 14, 2013).  And, even if it did, a litigant is permitted to plead inconsistent claims.  *See* Fed. R. Civ. P. 8(d)(3).  Plaintiff here has sufficiently pled, with respect to various counts, that the officers were acting under federal authority, state authority, or concurrently under both, and those allegations must be taken as true.  The question of whether any individual Defendant here was actually acting within the scope of his federal employment, his state employment, or both requires a factual inquiry that cannot be resolved at the motion-to-dismiss stage.

violation, an excessive-force claim, an illegal-arrest claim, and a malicious-prosecution claim.  *See* D.E. 1, ¶¶ 55, 60, 125, 130, 195, 200, 265, 270.  In the course of briefing Defendants' dismissal motions, however, Plaintiff concedes that he has not adequately pled a constitutional malicious-prosecution claim but asks the Court to grant him leave to amend that claim.  D.E. 45 at 16-17; D.E. 52 at 14-15.  The Court, therefore, dismisses the malicious-prosecution claims of Plaintiff's § 1983 and *Bivens* counts (Counts I, II, X, XI, XIX, XX, XXVIII, and XXIX) and turns its attention to the other three claims.

To state a claim for violation of rights  under § 1983, "a plaintiff must show that the violative conduct was committed by a person acting under color of state law and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002) (citations and internal quotations omitted).  To state a claim under *Bivens*, a plaintiff similarly must demonstrate that "'federal officers, acting under color of federal law,' acted unconstitutionally." *Salazar v. U.S. Att'y Gen.*, 476 F. App'x 383, 385 (11th Cir. 2012) (quoting *Abella*, 63 F.3d at 1065).

### 1.  Plaintiff Fails to State a Due-Process Violation

Plaintiff alleges that Chades, Jinete, Tamburo, and Suarez deprived Plaintiff of "the due process of law by withholding and failing to disclose exculpatory and/or pertinent and relevant evidence."  D.E. 1, ¶¶ 55(a), 60(a), 125(a), 130(a), 195(a), 200(a), 265(a), 270(a).  Specifically, Plaintiff contends that the officers did not disclose evidence "that Plaintiff did not know that the law enforcement Defendants were in fact law enforcement officers at the time of Plaintiff's purported resisting." *Id.*  It is not entirely clear from his Complaint or his briefs whether Plaintiff is asserting a procedural or substantive due-process claim.  Regardless, the Court can discern no cognizable due-

9

process claim of any type that would arise from the individual Defendants' failure to provide the alleged evidence.

It is true that a law-enforcement officer violates a criminal defendant's due-process rights, as enunciated in *Brady v. Maryland*, 373 U.S. 83 (1963), when the officer intentionally withholds exculpatory or impeachment evidence from a prosecutor.[6]  *See McMillian v. Johnson*, 88 F.3d 1554, 1568-69 (11th Cir. 1996).  However, *Brady* protects an individual's due-process right to have a fair trial and to be free from erroneous prosecution.  *Flores v. Satz*, 137 F.3d 1275, 1278-79 (11th Cir. 1998) (citations omitted).  When, as here, the prosecutor enters a *nolle prosequi* and the individual is never tried or convicted, the individual cannot state a *Brady* due-process violation.  *Id.*

However, a generous reading of Plaintiff's response brief suggests that he may be arguing that some other due-process right has been violated by the alleged withholding of evidence.  Put simply, Plaintiff urges that allowing a police officer to falsely charge someone with a crime and wait until "the brink of trial" to "come clean" cannot comport with due process.  D.E. 52 at 25.  But Plaintiff cites no legal authority supporting any procedural or substantive due-process right that would be implicated in this situation by the circumstances of Plaintiff's case (*i.e.*, having an allegedly unlawful misdemeanor criminal charge pending for approximately ten months, with no

---

[6] Plaintiff alleges that Defendants withheld and failed to disclose exculpatory evidence. The Court assumes that "withholding" evidence implies intentional conduct; otherwise Plaintiff also fails to state a due-process violation, as a law-enforcement officer's negligent or inadvertent failure to disclose exculpatory evidence to the prosecution does not constitute a due-process violation.  *See Porter v. White*, 483 F.3d 1294, 1308 (11th Cir. 2007).

Moreover, Plaintiff does not allege to whom the officers failed to disclose the information.  To the extent that Plaintiff alleges that the officers failed to disclose the exculpatory evidence to *him* (rather than the prosecutor), there is no *Brady* violation.  *See McMillian*, 88 F.3d at 1567 ("[I]nvestigators have no duty to disclose exculpatory and impeachment evidence to the defense.").

custodial confinement and no trial proceedings involved).  Further, no due-process right to be free

from an unlawful arrest or prosecution exists.  *See Rowe v. City of Fort Lauderdale*, 8 F. Supp. 2d

1369, 1373-74 (citing *Albright v. Oliver*, 510 U.S. 266 (1994) and *Baker v. McCollan*, 443 U.S. 137

(1979)).  Rather, the appropriate avenue of attack on an unlawful arrest or prosecution is by way of

the Fourth Amendment.  *Albright*, 510 U.S. at 274-75 (holding that pretrial deprivations of liberty

fall within the ambit of the Fourth Amendment).

Plaintiff has failed to demonstrate any constitutional due-process right of which he has been

deprived as a result of the individual Defendants' alleged withholding of evidence about Plaintiff's

lack of knowledge about their identities.  In the absence of the deprivation of any constitutional right,

Plaintiff cannot state a claim under § 1983 or *Bivens*.  Accordingly, those aspects of Plaintiff's

claims in Counts I, II, X, XI, XIX, XX, XXVIII, and XXIX alleging a deprivation of due process

must be dismissed.

## 2.  Plaintiff Fails to State a Claim for Excessive Force[7]

Plaintiff's Complaint alleges that Chades, Jinete, Tamburo, and Suarez violated his rights

---

[7] It is not clear whether Plaintiff actually maintains a discrete excessive-force claim.  His Complaint separately alleges that Defendants used excessive force in "seizing, detaining and/or arresting Plaintiff," *see, e.g.*, D.E. 1, ¶ 55(b), and that Defendants illegally seized, detained, or arrested him, *see, e.g.*, *id.* ¶ 55(c).  But Plaintiff does not aver that Defendants used excessive force in *illegally* seizing, detaining, or arresting him.  In his response briefs, however, Plaintiff appears to argue that his excessive-force claims are actually subsumed within his unlawful-arrest claims—*i.e.*, that the use of any force in illegally detaining Plaintiff was unlawful rather than pleading, in the alternative, that Defendants' use of force was excessive even if the detention was lawful.  *See* D.E. 45 at 17-18; D.E. 52 at 13-14 (both citing *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (standing for the proposition that even *de minimis* force used in an illegal arrest violates the Fourth Amendment)).  Plaintiff further suggests, apparently, that he used the word "excessive" to indicate the extent of the damages he suffered.  *See* D.E. 45 at 18; D.E. 52 at 14.  Thus, while it is unclear whether Plaintiff maintains a separate excessive-force constitutional claim, the Court, in an abundance of caution, analyzes the claim, anyway.

under the Fourth Amendment by "[u]tilizing excessive force in seizing, detaining and/or arresting Plaintiff." D.E. 1, ¶¶ 55(b), 60(b), 125(b), 130(b), 195(b), 200(b), 265(b), 270(b). The Complaint mentions the use of force only once, stating, "They beat Plaintiff HAYDEN to the ground and secured the pouch" that contained the licensed concealed firearm. *Id.* ¶ 43.

The Fourth Amendment's prohibition against unreasonable seizures provides protection against the use of excessive force by law-enforcement officers during the course of a lawful arrest, investigatory stop, or "other 'seizure' of a free citizen." *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Zivojinovich v. Barner*, 525 F.3d 1059, 1071-73 (11th Cir. 2008). "When properly stated, an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).

The inquiry into whether any given use of force is "reasonable" under the Fourth Amendment is an objective one that requires a careful balancing of "the nature and quality of the intrusion" and the "countervailing governmental interests at stake." *Graham*, 490 U.S. at 396-97 (citations and internal quotation marks omitted). Evaluating an excessive-force claim requires "careful attention to the facts and circumstances of each particular case," including, among other things, the relationship between the need for force and the amount used and the extent of the injury inflicted. *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)).

On the face of Plaintiff's Complaint, he fails to allege sufficient facts to state a plausible Fourth Amendment excessive-force claim. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"). Plaintiff offers

12

only the conclusory allegation that Defendants "beat" him to the ground, without alleging further facts about what, if anything, happened between Suarez's command and the alleged beating, the amount of time that passed between the command and the alleged beating, the nature or extent of the beating, or the types of injuries Plaintiff suffered.  Thus, Plaintiff's unelaborated allegation of a "beating" fails to allege sufficient facts for the Court to be able to determine that the alleged beating constituted excessive force, as the Complaint provides no allegations that would allow the Court to evaluate the amount of force used and the extent of injury inflicted in relation to the need for force.  As a result, the allegation is conclusory and does not permit "a plausible inference that the force [Defendants] used was unreasonable." *Barr v. Gee*, 437 F. App'x 865, 878 (11th Cir. 2011) (citing *Zivojinovich*, 525 F.3d at 1072).  Moreover, Plaintiff's allegation that Defendants beat him to the ground and "secured the pouch" may suggest that Plaintiff was noncompliant with the officers' demand that Plaintiff relinquish his pouch and that the officers engaged in a reasonable amount of force necessary to secure Plaintiff's weapon. *See id.* ("[Plaintiff's] admission that they beat him 'into submission' suggests that they used the amount of force necessary to subdue his efforts to resist or harm them.").

Thus, to the extent that Plaintiff asserts a discrete, alternative cause of action for excessive force used in the course of a lawful arrest, Plaintiff has failed to state a plausible claim for relief, and this aspect of his constitutional claims must be dismissed.  To the extent that Plaintiff's claims of force are subsumed within his unlawful-arrest claims, they are addressed below.

### 3. Plaintiff Does Not State a Claim for Unlawful Arrest

Plaintiff's most substantial constitutional claim is that Defendants Chades, Jinete, Tamburo, and Suarez "wrongfully and falsely seiz[ed], detain[ed] and arrest[ed] Plaintiff against his will

although he had not committed the crime alleged, thus depriving Plaintiff of his liberty." D.E. 1, ¶¶ 55(c), 60(c), 125(c), 130(c), 195(c), 200(c), 265(c), 270(c).  More specifically, Plaintiff asserts that the individual Defendants did not have probable cause to arrest and charge Plaintiff with a violation of Section 843.02, Fla. Stat., because "the Defendant officers knew that Plaintiff did not know the officers were in fact law enforcement officers at the time of Plaintiff's purported resisting." *See, e.g.*, D.E. 52 at 2.  For their parts, Defendants argue that on the face of the Complaint as alleged, probable cause—or at least arguable probable cause—existed at the time of the arrest, entitling them to dismissal of these counts.

### a. Relevant Legal Standards

An individual's right to be free from unreasonable seizures under the Fourth Amendment is violated when a law-enforcement officer arrests the individual without probable cause.  *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010).   Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (citations and internal quotation marks omitted).  An officer has probable cause to arrest when the arrest is "objectively reasonable based on the totality of the circumstances." *Id.*  An officer is not required, however, "to prove every element of a crime before making an arrest." *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007).  The existence of probable cause "constitutes an absolute bar to a section 1983 action for false arrest." *Myers*, 713 F.3d at 1328 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

To receive qualified immunity, as noted above, a defendant law-enforcement officer must

establish that he was acting within his discretionary authority when the wrongful act occurred. *See Lee*, 284 F.3d at 1194. Here, Plaintiff does not dispute that the individual Defendants were acting within the scope of discretionary authority when they arrested and charged him with a violation of Florida law. Accordingly, Plaintiff bears the burden of demonstrating that qualified immunity does not apply in this instance. *Id.* When, as here, probable cause is the key issue, "all that is required for qualified immunity to be applicable to an arresting officer is '*arguable* probable cause to believe that a person is committing a particular public offense.'" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (emphasis in original) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998)). Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1144 (11th Cir. 2007) (citation and internal quotation marks omitted). Demonstrating arguable probable cause does not require an arresting officer to prove every element of the charged crime. *Scarbrough*, 245 F.3d at 1302-03.

Plaintiff was charged with violating Section 843.02, Fla. Stat., which provides, in relevant part, that

> [w]hoever shall resist, obstruct, or opposed any officer as defined in s. 943.10(1) . . . or other person . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .

To establish a violation of this provision, Florida courts have held that the state must establish that (1) the officer was engaged in the lawful execution of a legal duty and (2) the action by the individual charged constituted obstruction or resistance of the lawful duty. *H.A.P. v. State*, 834 So.

2d 237, 238 (Fla. 3d DCA 2002) (citing *Slydell v. State*, 769 So. 2d 667, 671 (Fla. 4th DCA 2001)).

Florida courts have also required that the state prove that an offender had knowledge of the officer's

status as a law-enforcement official in order to sustain a conviction under Section 843.02. *See Polite*

*v. State*, 973 So. 2d 1107, 1113-14 (Fla. 2007) (citations omitted).

### b. Analysis

Plaintiff appears to assert that the individual Defendants lacked probable cause on each

element—legal duty, obstruction, and knowledge—but focuses the bulk of his argument on the

knowledge element. *See* D.E. 52 at 10-13, 19-24. However, the probable-cause analysis is

complicated by the fact that the Complaint does not state in what respect Plaintiff resisted,

obstructed, or opposed an officer, if at all. *Cf. Davis v. State*, 973 So. 2d 1277, 1279 (Fla. 2d DCA

2008) ("In determining whether an officer was engaged in the lawful execution of a legal duty, we

must apply the legal standards governing the officer's duty *at the point that the resistence occurs*.")

(emphasis added) (citation omitted)). Rather, the Court is left to guess what the underlying police

activity was that Plaintiff allegedly obstructed. Because, as explained below, two equally plausible

bases for the arrest exist, one of which would require dismissal of the Complaint, Plaintiff has failed

to "raise a right to relief above the speculative level," and, therefore, his Complaint must be

dismissed. *See Twombly*, 550 U.S. at 555; *see also id.* at 564-69 (finding a plaintiff's factual

allegations gave rise to an equally plausible inference of lawful conduct). However, because the

other plausible basis for arrest may support a claim, the Court will permit Plaintiff, if he can do so,

to amend his pleading to so state.

In considering whether probable cause, or arguable probable cause, exists, the Court discerns

from the Complaint read in conjunction with the parties' briefing the following two equally plausible

bases for the charge under Section 843.02: (1) that Plaintiff was obstructing the undercover operation and (2) that Plaintiff resisted Suarez's command to turn over his weapon.  *See* D.E. 25 at 8-9; D.E. 31 at 7-8; D.E. 52 at 11-12, 13-14.  As more fully explained below, in viewing the facts as true and drawing all plausible inferences in favor of Plaintiff, as required at this stage of the proceedings, the Court finds that probable cause, or in the alternative, arguable probable cause, defeats Plaintiff's claims with respect to the second theory, but that Plaintiff may state a claim with respect to the first.

i. Relevant Facts

Plaintiff alleges the following relevant facts:  Defendants were engaged in an undercover operation on behalf of an IRS criminal task force and were acting as police officers under the auspices of their respective state agencies and the IRS.  D.E. 1, ¶¶ 27, 30.  Plaintiff approached Chades and asked him to identify himself.  *Id.* ¶ 35-36.  Chades showed Plaintiff his IRS identification.  *Id.* ¶ 39.  Plaintiff did not leave the area, and Chades summoned Suarez, Jinete, and Tamburo to the scene.  *Id.* ¶ 40.  Again, Plaintiff did not leave the scene but instead called 911, asking for uniformed police officers to come to the scene.  *Id.* ¶ 41.  Before the uniformed officers arrived, Suarez asked Plaintiff to relinquish his firearm.  *Id.* ¶¶ 42-43.  All four officers[8] used force to secure the firearm.  *Id.* ¶ 43.  Suarez then issued a Notice to Appear, charging Plaintiff with "the misdemeanor crime of resisting an officer without violence to his or her person under Florida Statutes § 843.02."  *Id.* ¶¶ 46, 48.

ii.  Probable Cause, or Arguable Probable Cause, Exists with Regard to the Firearm

To the extent that Plaintiff's unlawful-arrest claim is premised on being charged with

---

[8] Plaintiff alleges that "[t]hey beat Plaintiff to the ground and secured the pouch."  D.E. 1, ¶ 43.  It is plausible to infer that Plaintiff used "they" as shorthand for all four officers.

resisting Suarez's command to turn over the firearm, the Court finds that probable cause exists on the face of the Complaint, so this claim is foreclosed. Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Myers*, 713 F.3d at 1328. And there is arguable probable cause when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Skop*, 485 F.3d at 1144.

Here, based on the facts alleged in the Complaint, the officers knew that Plaintiff approached them. *See* D.E. 1, ¶ 35. They knew that they had identified themselves to Plaintiff as law-enforcement officers. *See id.* ¶¶ 39, 40. The officers further knew that Plaintiff acted in a matter that suggested that Plaintiff refused to believe what the officers had said about their identities and that Plaintiff would not leave the scene. *See id.* ¶ 41. In addition, they also were aware that Plaintiff was armed with a firearm. *See id.* ¶¶ 36, 42. Based on these circumstances, the officers were faced with a less-than-cooperative individual armed with a dangerous weapon. Deputy Suarez asked Plaintiff to turn over the weapon in Plaintiff's possession, an objectively reasonable request made in order to protect the safety of himself, his colleagues, Plaintiff, and the general public, under the circumstances. Thus, in directing Plaintiff to surrender his weapon, Suarez engaged in the execution of a lawful duty.[9]

-------------------------

[9] It is not clear that Plaintiff even contests the "legal duty" element with regard to Suarez's command. *See* D.E. 52 at 10 ("Besides, [*sic*] Suarez's request for Plaintiff to relinquish his pouch after Plaintiff had already provided Suarez with Plaintiff's identification none of the Defendant officers were in furtherance of any legal duty." (citations omitted)).

Plaintiff did not comply with this instruction, thereby resisting or opposing Suarez's legal command.  While Plaintiff argues that the officers were required to wait for Plaintiff to comply with the request on his own terms, *see* D.E. 52 at 11 (citing D.E. 1, ¶ 43), under these circumstances, the officers were reasonably not required to wait any length of time for Plaintiff to accede to their safety instruction when they were faced with an individual who already had proven less-than-amenable to their authority.  *Cf. Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007); *McQueen v. Johnson*, 506 F. App'x 909, 916 (11th Cir. 2013); *see generally United States v. Lewis*, 674 F.3d 1298, 1308-09 (11th Cir. 2012) (noting the unusual precautions that are warranted by the dangers firearms pose to law-enforcement officers).  The fact that Plaintiff suggests now that he would have complied with the command is irrelevant; it is the facts and circumstances *within the officers' knowledge* at the time that govern the inquiry.  Plaintiff provides no facts that indicate that he told the officers that he would ever comply or that indicate in any other way that the officers had knowledge that Plaintiff would follow their directive.  Based on the facts alleged in the Complaint, it was reasonable for the officers to believe that Plaintiff was resisting or was about to resist Suarez's command.

Finally, Plaintiff devotes the bulk of his attack on probable cause to arguing that the Defendant officers had affirmative knowledge that Plaintiff did not know the Defendants were actually law-enforcement officers.  *See* D.E. 52 at 2-3, 6, 10, 12-13; *see also* D.E. 1, ¶ 46.  Plaintiff maintains that if Defendants had affirmative knowledge of Plaintiff's lack of knowledge, the officers knew that they could not establish the knowledge element of a Section 843.02 violation and, by extension, that they could not possibly demonstrate probable cause for the violation.  The Court disagrees.

To support his contention, Plaintiff relies heavily on his allegations that the officers were not

19

in uniform, that he thought Chades's IRS identification "looked bogus," that he was "skeptical" of the officers' identities, and that he made a 911 call asking for "marked units to arrive to confirm or deny" the undercover officers were who they said they were.  D.E. 52 at 12-13; D.E. 1, ¶¶ 38, 39, 40, 41.  None of these facts establish, however, that the officers had affirmative knowledge about Plaintiff's lack of knowledge.

At the outset, it is important to note that while knowledge may be alleged generally, *see* Fed. R. Civ. P. 9(b), Plaintiff's Complaint never actually sets forth any allegation as to what knowledge *the officers possessed* at the time they made the arrest.  The factual allegations all focus on Plaintiff's knowledge—his opinion that the IRS badge looked "bogus," his "skepticism," and his allegation that "there was no question that Plaintiff HAYDEN lacked that knowledge," D.E. 1, ¶¶ 39, 40, 46—but Plaintiff never avers that he conveyed his state of mind to Defendants.  *Cf. Jordan*, 487 F.3d at 1355 ("Of course, no police officer can truly know another person's subjective intent.").  The closest Plaintiff comes to an allegation about Defendants' knowledge is in his due-process claim, when he asserts that the Defendant officers had evidence "that Plaintiff did not know that the law enforcement Defendants were in fact law enforcement officers at the time of Plaintiff's purported resisting," *e.g.*, *id.* ¶ 55(a), but Plaintiff does not identify this evidence and, in any event, this allegation is couched in terms of what Plaintiff knew at the time of resisting, not what the officers knew.  *See Durruthy v. Pastor*, 351 F.3d 1080, 1090-91 (11th Cir. 2003).

Contrary to Plaintiff's argument, it appears from the face of the Complaint and the plausible inferences drawn therefrom, only that the officers were aware that Plaintiff refused to accept who they were.  From Plaintiff's version of the facts, the officers had no basis to know what was going on inside Plaintiff's mind—whether he honestly did not know that they were law-enforcement

officers or whether, for example, he was unreasonably or willfully ignoring the information that they had provided to him.  This is not the same as possessing affirmative knowledge about Plaintiff's state of mind, and in the absence of such allegations, the totality of the circumstances here support the existence of probable cause.  *Cf. Jordan*, 487 F.3d at 1355-56 (discussing authorities that hold that no probable cause is necessary for general intent crimes).  Moreover, the officers were under no obligation to prove every element of the crime—particularly mental-state elements—or investigate every possible defense before making an arrest.  *Jordan*, 487 F.3d at 1355-56; *Durruthy*, 351 F.3d at 1088-89; *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983); *see also McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) ("[W]hen an officer has evidence that a defendant has engaged in conduct proscribed by law . . . he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial.").  Accordingly, under the facts and circumstances as alleged in the Complaint, Defendant officers had probable cause, and certainly arguable probable cause, to arrest Plaintiff for violating Section 843.02 to the extent that the basis for the charge was Plaintiff's resisting Suarez's command to surrender the firearm.

iii. No Probable Cause to Charge an Obstruction with the Undercover Investigation

As noted above, to establish a violation of Section 843.02, the allegedly obstructed officer must have been "engaged in the lawful execution of a legal duty."  *See H.A.P.*, 834 So. 2d at 238. Florida courts have narrowly construed the "legal duty" element to distinguish "between an officer who is engaging in the lawful execution of a legal duty, and a police officer who is merely on the job."  *C.W. v. State*, 76 So. 3d 1093, 1095 (Fla. 3d DCA 2011).  Thus, legal duties include executing legal process, legally detaining someone, or asking for assistance in an emergency situation.  *Id.*; *Jay*

*v. State*, 731 So. 2d 774, 775-76 (Fla. 4th DCA 1999); *Porter v. State*, 582 So. 2d 41 (Fla. 4th DCA 1991).   Moreover, Florida courts have found a legal duty obstructed under 843.02 when the defendant impeded "undercover activities by acting as a 'lookout' during the commission of a criminal act."   *C.W.*, 76 So. 3d at 1095.   Aside from these categories, where words alone may suffice to establish an obstruction, a person may impede an officer's legal duty when he physically obstructs a legal duty.   *See Davis v. Williams*, 451 F.3d 759, 765 (11th Cir. 2006).   Especially in the undercover context, though, Florida courts have regularly found that actually exposing the identity of an undercover officer is *insufficient* to establish probable cause for an arrest under Section 843.02. *See J.V. v. State*, 763 So. 2d 511, 511-12 (Fla. 4th DCA 2000); *Jay*, 731 So. 2d at 775-76; *State v. Dennis*, 685 So. 2d 848, 849 (Fla. 3d DCA 1996).

Here, Defendants were obviously engaged in an undercover operation.   But nothing on the face of the Complaint suggests that the officers were observing actual criminal activity, were about to make arrests, or were engaged in a "sting" of some sort during the time Plaintiff approached and remained in the area.   Accordingly, based on the facts in the Complaint construed in a light most favorable to Plaintiff, under Florida law, the officers involved in the undercover operation were "merely on the job" rather than in the process of executing a legal duty.   *See Jay*, 731 So. 2d at 775-76.

Moreover, nothing on the face of the Complaint indicates that Plaintiff himself was a target of the operation, nor does any suggestion exist that Plaintiff was attempting to warn anyone, let alone the targets of the investigation, that law-enforcement officers were operating in the area covertly. In fact, as set forth in the Complaint, Plaintiff's subjective belief that the officers were not law enforcement is abundantly apparent and belies any inference that Plaintiff was trying to expose the

presence of law enforcement.  Plaintiff's mere continued presence at the scene of an undercover operation and his questions to the undercover officers are thus insufficient, under Florida law, to establish probable cause for a violation of Section 843.02.  *See J.V.*, 763 So. 2d at 512; *Jay*, 731 So. 2d at 776; *Dennis*, 684 So. 2d at 849.  Accordingly, to the extent that Plaintiff's unlawful-arrest claim is premised on being charged for obstructing the undercover operation, it may be viable if properly pled, and, it does not appear that Defendants would be entitled to qualified immunity.[10]

But as the Complaint currently reads, it fails to state the basis alleged by the state in charging Plaintiff with obstruction.  As explained above, Plaintiff's failure to identify in his Complaint the basis for his allegedly unlawful arrest dooms Plaintiff's claims under § 1983 and *Bivens*.  As all aspects of Counts I, II, X, XI, XIX, XX, XXVIII, and XXIX must be dismissed, these counts are dismissed in their entirety.  Plaintiff shall have fourteen days to amend his Complaint, however, to add, if he can, relevant facts clarifying the basis for his arrest.

### B.  Plaintiff's Common-Law False-Arrest Claims Against the Individual Officers in Their State Capacities

In Counts III, XII, XXI, and XXX, Plaintiff alleges that Chades, Jinete, Tamburo, and Suarez committed the common-law tort of false arrest, also known as false imprisonment.[11]  Chades, Jinete,

---

[10] Defendants Chades, Jinete, and Tamburo argue that no factual allegations exist in the Complaint "regarding any acts or omissions by Chades, Jinete, or Tamburo that caused Hayden to be falsely arrested" or that they had any personal involvement in the allegedly false arrest.  D.E. 31 at 6.  The Court disagrees.  As noted, the Complaint's use of "they" plausibly indicates that all four officers were involved in the force used to secure the weapon, D.E. 1, ¶ 43, and any force used incident to an unlawful arrest violates the Fourth Amendment.  *See Bashir*, 445 F.3d at 1331-32.

[11] In Florida, common-law "false arrest" and "false imprisonment" are different labels for the same cause of action.  *See Rankin v. Evans*, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998) (citing *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1164 n.1 (Fla. 3d DCA 1981)).

and Tamburo have not submitted any argument regarding these counts, presumably because they maintain that they were acting in a federal capacity only.[12]  As noted above, though, Plaintiff has sufficiently stated a claim against the individual Defendants for acting both in state and federal capacities, and the United States Attorney's Certification that the officers were acting in a federal capacity does not, by itself, overcome Plaintiff's allegations that they were operating under concurrent or alternative state authority.

Defendant Suarez, on the other hand, has set forth arguments regarding the false-arrest claim. To the extent applicable, the Court applies these arguments to the other officers, in the interest of judicial economy.  Suarez contends that the common-law claim for false arrest should be dismissed because probable cause existed to make the arrest, and, in the alternative, that Suarez is entitled to official immunity under Section 768.28(9)(a), Fla. Stat.  *See* D.E. 25 at 10-12, 19-20.

To state a common-law claim for false arrest under Florida law, Plaintiff must demonstrate that he was unlawfully restrained, without legal authority, against his will.  *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing *Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944)); *see also Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So.2d 1266, 1268-69 (Fla. 4th DCA 2006).  A warrantless arrest without probable cause is unlawful.  *See Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009).

Plaintiff alleges in his common-law false-arrest claims that his arrest was unlawful because the criminal offense with which he was charged was not supported by probable cause.  *See, e.g.*, D.E.

---

[12] The United States asserts that it should be substituted for Chades, Jinete, and Tamburo with respect to Plaintiff's common-law false-arrest claims.  *See* D.E. 32 at 3.  However, Plaintiff has not asserted common-law false-arrest claims against the individual Defendants arising from their conduct as federal employees, but rather, as officers acting under color of state law. Therefore, substitution is not appropriate.

24

1, ¶ 66.  However, as discussed above, the factual allegations in Plaintiff's Complaint are lacking with respect to the probable-cause question.  Accordingly, Plaintiff's allegations of an absence of probable cause and an unlawful arrest are conclusory and are unsupported by the factual allegations of the Complaint.  Therefore, Counts III, XII, XXI, and XXX must be dismissed.  Should Plaintiff amend the factual allegations concerning the basis of his arrest to support his constitutional claims, he may replead these counts as well.

To the extent that Defendants maintain that statutory immunity protects them from the common-law false-arrest claims as pled regardless of the existence of probable cause, the Court is unpersuaded.  Section 768.28(9), Fla. Stat., provides, in relevant part, that

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

Fla. Stat. § 768.28(9)(a) (emphasis added).  Accordingly, the only way that the individual Defendants can be held personally liable under a state-law false-arrest claim is if they acted with bad faith, malice, or in wanton and willful disregard of human rights, safety, or property.

In the respective counts, Plaintiff alleges the Defendants "acted in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property of Plaintiff HAYDEN'S rights." *See* D.E. 1, ¶¶ 70, 140, 210, 280.  Suarez maintains that this formulaic recitation of the statute is insufficient to support an inference that the officers acted with malice.  The Court disagrees.

A split of authority appears to exist within this district as to whether, for the purposes of overcoming official immunity under Section 768.28(9), malice may be alleged generally or requires further factual support.  *Compare Bloom v. Miami-Dade Cnty.*, 816 F. Supp. 2d 1265, 1272-73 (S.D. Fla. 2011) *with Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1348 (S.D. Fla. 2011). Given the admonition in Rule 9(b), Fed. R. Civ. P. that "[m]alice . . . may be alleged generally," the Court agrees that Plaintiff's allegation of malicious purpose is sufficient to overcome Section 768.28(9)(a).

### C.  Plaintiff's False Arrest Claims Against Medley, North Miami Beach, and the Broward County Sheriff

In Counts V and XIV, Plaintiff asserts his common-law false-arrest claims against the Town of Medley based on the conduct of Chades and Jinete, respectively, in their state capacities.  Count XXIII makes the same claim against the City of North Miami Beach for the conduct of Tamburo, and Count XXXI makes the same claim against Broward County Sheriff Scott J. Israel for the conduct of Suarez.  Each of these counts is identical to the corresponding counts levied against the individual officers except that each count omits the allegation of bad faith or malicious purpose. *See, e.g.*, D.E. 1, ¶¶ 283-290.

As with the common-law false-arrest claims against the individual officers, Plaintiff's claims of an unlawful arrest are conclusory.  Thus, Counts V, XIV, XXIII, and XXXI must be dismissed, but the Court grants Plaintiff leave to amend these counts if he is able to do so to state a viable claim.

The two municipalities and the sheriff, through their own motions or through the incorporation of each others' motions, have advanced several other arguments in support of dismissing the claims against them.  To the extent that these arguments would preclude even repled

false-arrest claims, none of them are availing.

Both Medley and North Miami Beach contend that because the United States Attorney's Certification establishes that the officers were acting within the scope of federal employment during the incident here, Chades, Jinete, and Tamburo could not possibly have been acting within the scope of their state employment, and, therefore, the municipalities cannot be held liable. D.E. 35 at 5-6; D.E. 38 at 4-5. As discussed above, however, the fact of federal employment does not preclude the possibility of concurrent state employment, and—at this stage of the proceedings—Plaintiff's allegations of concurrent state and federal employment are sufficient to withstand dismissal.[13]

The two municipalities also urge that they are entitled to qualified immunity.[14] D.E. 35 at 8; D.E. 38 at 6. However, it is well established that qualified immunity is designed to protect government *officials* performing discretionary functions. *See Lee*, 284 F.3d at 1194. Qualified immunity is not available to municipalities. *See Owen v. City of Independence, Mo.*, 445 U.S. 622,

---

[13] To the extent that North Miami Beach seeks to have its dismissal motion converted to a motion for summary judgment and then invites the Court to engage in an analysis of the employment relationship based on attached affidavits and deposition testimony, the Court declines and excludes these extraneous materials. *See* D.E. 35 at 3; D.E. 63 at 4. The record is not developed in this regard, and Plaintiff has not had the opportunity to present opposing evidence.

North Miami Beach further contends that the application of the borrowed-servant doctrine is a question of law that may be decided at the motion-to-dismiss stage. D.E. 63 at 2-4. While the city is correct that the existence of a borrowed-servant relationship is a question of law, the determination of that question is heavily fact based, turning on such factors as the extent of the employer's control, who is responsible for paying the employee, and who provided the employee's equipment. *See Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1123 (11th Cir. 2011). The facts as alleged in the Complaint, however, do not establish on their face the existence of a borrowed-servant relationship.

[14] North Miami Beach also contends that Plaintiff has failed to state a municipal-liability claim under *Monell v. Dep't of Soc. Servs.*, 435 U.S. 658 (1978). *See* D.E. 35. The city is correct, in that Plaintiff has not asserted a § 1983 claim against it; Plaintiff has asserted only a common-law tort claim against the city. Accordingly, the city's *Monell* analysis is moot.

657 (1980).

The Broward County Sheriff also asserts that Plaintiff's claim against him is barred by the Eleventh Amendment because Florida has not waived its sovereign immunity with respect to suits in federal court. D.E. 41 at 3; *see* Fla. Stat. § 768.28(18). Plaintiff counters that controlling precedent in the Eleventh Circuit holds that Florida sheriffs are not protected by sovereign immunity, or, at the very least, that the existence of such protection cannot be determined at this stage. D.E. 57 at 4-6. The Court agrees with Plaintiff that Eleventh Amendment immunity cannot be established at this point in this case.

The Eleventh Amendment protects a state's "constitutional interest in immunity" that "encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984) (emphasis in original). A state's waiver of sovereign immunity in its own courts is not a waiver of its Eleventh Amendment immunity in federal court. *Id.* at 99 n.9. The Eleventh Amendment's protection from suit extends to both the state and an "arm of the state." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Determining whether an entity is an "arm of the state" requires an individualized inquiry into the "particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* (citing *Shands Teaching Hosp. & Clinics v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000)). To make the determination, the Court must looked to four factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309. As the record in this case stands now, the Court has insufficient facts to determine whether Eleventh Amendment immunity applies to the Sheriff in this instance.

28

Plaintiff relies heavily on *Abusaid v. Hillsborough County Board of County Commissioners*, 405 F.3d 1298 (11th Cir. 2005), in which the Eleventh Circuit determined that a Florida county sheriff was not an arm of the state when that sheriff enforced a county ordinance.  405 F.3d at 1304. The Broward County Sheriff attempts to distinguish *Abusaid*, however, on the basis that the sheriff's function in that case was to enforce a county ordinance while, in this case, Suarez was enforcing a state law.  *See* D.E. 61 at 2-3.  While the Sheriff's argument has some appeal, the Court cannot ignore the fact that the *Abusaid* Court's analysis of the four factors under Florida law would apply with nearly equal force to all Florida sheriffs, regardless of the type of regulation that they were enforcing.  But more to the point, this case presents other factual idiosyncracies,[15] beyond the law under which Plaintiff was arrested, that may influence the Eleventh Amendment inquiry. Accordingly, while the Court does not now find that Eleventh Amendment immunity does not apply in this case, the Court cannot dismiss the case against the Broward County Sheriff (or any other Defendant) on the grounds of Eleventh Amendment immunity, based on the current factual record.

Finally, Defendants make the converse of the official-immunity argument raised by the individual officer Defendants—if the individual officers acted with bad faith or malice, Section 768.28(9)(a) precludes finding the municipalities or the Sheriff liable.  *See* D.E. 35 at 8-9; D.E. 38 at 6; D.E. 41 at 2.  Defendants are correct, in principle.  Under Section 768.28(9)(a), an individual officer or a governmental entity—but not both—can be held liable.  *See Johnson v. State Dep't of Health & Rehabilitative Servs.*, 695 So. 2d 927, 930 (Fla. 2d DCA 1997) (citing *McGhee v. Volusia Cnty.*, 679 So. 2d 729, 733 (Fla. 1996)).  But Plaintiff may plead inconsistent and mutually exclusive

---

[15] For example, it is unclear what effect, if any, concurrent federal and state employment—if it exists—would have on the functional inquiry, for example, in terms of state control or funding.

29

claims. *Id.* at 930-31; *see* Fed. R. Civ. P. 8(d). Therefore, although Plaintiff may not recover from both the individuals and their employers, Plaintiff's inconsistent claims cannot provide a basis for dismissal.

### D. Plaintiff's Common-Law Malicious-Prosecution Claims Against the United States and Against the Individual Officers for Conduct in Their State and Federal Capacities

In Counts VI, XV, XXIV, and XXXIII, Plaintiff alleges that Chades, Jinete, Tamburo, and Suarez committed the common-law tort of malicious prosecution by virtue of their conduct as state law-enforcement officers. As with the false-arrest counts, Chades, Jinete, and Tamburo have not submitted any argument regarding these counts, presumably because they maintain that they were acting in a federal capacity only.[16] However, as noted above, Plaintiff has sufficiently stated a claim against the individual Defendants for acting both in state and federal capacities, and the United States Attorney's Certification that the officers were acting in a federal capacity does not, by itself, overcome Plaintiff's allegations that they were operating in a concurrent or alternative state capacity.

In Counts VII, XVI, XXV, and XXXIV, Plaintiff sets forth his common-law malicious-prosecution claims against the individual Defendants for their conduct as federal employees. Counts IX, XVIII, XXVII, XXXVI similarly assert malicious-prosecution claims against the United States by virtue of the respective officers' conduct as federal employees. In response, the United States seeks, under the Federal Tort Claims Act, 28 U.S.C. § 2679, to dismiss the claims against Chades,

---

[16] As with the common-law false-arrest claims, the United States seeks to substitute itself for Chades, Jinete, and Tamburo with respect to all of the common-law malicious-prosecution claims. *See* D.E. 32 at 3. Unlike the false-arrest claims, Plaintiff has asserted malicious-prosecution claims against the individual Defendants in both their state and federal capacities. The United States's substitution request with respect to the federal-capacity-based malicious-prosecution claims is addressed below. However, substitution with respect to the state-capacity-based malicious-prosecution claims is not appropriate.

Jinete, and Tamburo.[17]  D.E. 32 at 3.  Plaintiff agrees that the United States should be substituted with respect to these three Defendants but asks the Court to "otherwise deny Defendants' Motion to Dismiss," especially with respect to Suarez.  D.E. 55 at 4, 12.

## 1. Federal-Capacity Counts Are Dismissed with Respect to All Four Individual Defendants

To the extent that Plaintiff asks the United States to be substituted into Counts VII, XVI, and XXV, in lieu of dismissing them, the Court sees no basis for permitting Plaintiff to maintain redundant counts against the United States.  The counts against the individual Defendants are identical to the counts against the United States.  *Compare, e.g.*, D.E. 1, ¶¶ 97-105 *with id.* ¶¶ 115-123.  Accordingly, Counts VII, XVI, and XXV are dismissed.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant . . . matter.").

Further, the Court deems it proper to dismiss the individual federal-capacity claim, Count XXXIV, with respect to Suarez.  Although the United States Attorney has certified that Suarez was not a member of the task force, that fact is irrelevant to whether a common-law tort claim can be maintained against Suarez as an individual operating within the scope of federal employment.  Section 2679, provides that the remedy against the United States for an injury resulting from a wrongful act of "any employee of the Government while acting within the scope of his office or employment *is exclusive of any other civil action or proceeding*."  28 U.S.C. § 2679(b)(1) (emphasis added).  The effect of this provision is to immunize federal employees from suits for torts committed within the scope of their employment.  *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1995); *United States v. Smith*, 499 U.S. 160, 173 (1991); *Albajon v. Gugliotta*, 72 F. Supp. 2d 1362, 1371 (S.D. Fla. 1999).

---

[17] The United States has withdrawn its certification with regard to Suarez.  D.E. 42.

In Count XXXIV, Plaintiff alleges that "Defendant Suarez was acting under color of law and within the course and scope of his duties as a member of the Task Force for the U.S. DEPARTMENT OF THE TREASURY." D.E. 1, ¶ 310. Thus, Plaintiff's allegation is that Suarez committed the common-law tort of malicious prosecution during the "course and scope" of his federal employment. Taken as true, this allegation in Plaintiff's Complaint facially demonstrates that Suarez is immune from this tort count. Plaintiff's exclusive remedy for any malicious-prosecution tort committed by Suarez in the course of federal duties is by way of a suit against the United States.[18] Therefore, Count XXXIV must also be dismissed.

## 2. Plaintiff Fails to State a Claim for Malicious Prosecution with Respect to the State-Capacity and Federal Tort Claims Act Counts

To plead a claim for malicious prosecution under Florida law, Plaintiffs must allege the following elements:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car*, 632 So. 2d at 1355. In their dismissal motions, the individual Defendants and the United States challenge only the fourth element,[19] arguing that the existence of probable cause

---

[18] Count XXXVI of Plaintiff's lawsuit does just that. Of course, to prevail, Plaintiff must demonstrate that, contrary to the United States Attorney's Amended Certification, Suarez was acting as a federal employee during the incident.

[19] With respect to the constitutional malicious-prosecution claim, Chades, Jinete, and Tamburo pointed out that "[i]n the case of a warrantless arrest, the judicial proceeding does not

defeats the malicious-prosecution claim.  *See* D.E. 25 at 12-13; D.E. 32 at 12-14.  As discussed previously, though, Plaintiff's failure to identify the factual basis for his arrest renders his allegations of a lack of probable cause conclusory.  Without a plausible factual basis for this element of a malicious-prosecution claim, the remaining common-law malicious-prosecution claims, Counts VI, IX, XV, XVIII, XXIV, XXVII, XXXIII, and XXXVI, must be dismissed.  Once again, however, the Court authorizes Plaintiff to amend his Complaint if he can state a viable cause of action for malicious prosecution.

### E.  Plaintiff's False-Arrest Claim Against Broward County is Dismissed

In Count XXXII, Plaintiff asserts a common-law false-arrest claim against Broward County based on the conduct of Suarez as a state law-enforcement officer.  Relying on *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) and *Diaz ex rel. Gomez v. Broward County*, Case No. 05-cv-61477-MGC, D.E. 86 (S.D. Fla. May 9, 2006), the county argues that it is not the proper party to be sued for Suarez's conduct but that the Broward County Sheriff, in his official capacity, is the proper Defendant.  D.E. 8.  Plaintiff concedes that the identical counts against the Sheriff and the county are redundant, but attaches a condition to his concession.  D.E. 15 at 2-3.  Specifically, Plaintiff suggests that any dismissal of Broward County be conditioned on either the county's agreement to pay any judgment against the Sheriff that exceeds the Sheriff's liability insurance or that Plaintiff at least "be permitted to seek collection of the difference from Broward County."  *Id.*

---

begin until the party is arraigned or indicted," and that here, Plaintiff was never arraigned or indicted.  *See* D.E. 31 at 16-18 (internal quotation marks omitted); *see generally Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946-947.  The purpose of this argument was to contest Plaintiff's assertion that he had been deprived of liberty and not, apparently, to challenge the contention that the officers were the legal cause of the original proceedings.  In any event, the parties have not argued the issue of legal cause.

at 3.

To be sure, it is established law that "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Plaintiff necessarily would be permitted to seek collection of any judgment against the Sheriff from the county, and the county admits as much. *See* D.E. 18 at 2. To the extent, however, that Plaintiff seeks an order at this time requiring the county to pay any judgment that does not yet exist, Plaintiff's request is premature. Nor does Plaintiff cite any authority permitting or requiring the Court to condition a dismissal on the entry of such an order. Accordingly, the Court dismisses the count against Broward County.

### F. Leave to Amend

At various points in Plaintiff's briefs, he alludes to other factual information in his possession and requests permission to amend his Complaint. *See, e.g.*, D.E. 45 at 17; D.E. 52 at 15. As the Court is granting Plaintiff leave to amend his Complaint with regard to the factual basis of his arrest, Plaintiff may also, as appropriate and with consideration of the analysis herein, amend his Complaint in other respects as well.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. Defendant Broward County's Motion to Dismiss [D.E. 8] is **GRANTED**.

2. Defendant Deputy Humberto Suarez's Motion to Dismiss [D.E. 25] is **GRANTED** as set forth herein.

3. Defendants Joel Chades, Arturo Jinete, and Gregory Tamburo's Motion to Dismiss [D.E.

31] is **GRANTED** as set forth herein.

4. Defendant United States's Motion to Dismiss [D.E. 32] is **GRANTED** as set forth herein.

5. Defendants City of North Miami Beach, City of North Miami Beach Police Department, and Gregory Tamburo's Motion to Dismiss [D.E. 35] is **GRANTED** as set forth herein.

6. Defendants Town of Medley and Medley Police Department's Motion to Dismiss [D.E. 38] is **GRANTED** as set forth herein.

7. Defendant Sheriff Scott J. Israel's Motion to Dismiss [D.E. 41] is **GRANTED** as set forth herein.

8. All Counts of the Complaint are **DISMISSED**. The Medley Police Department, the North Miami Police Department, the United States Department of the Treasury, and Broward County are terminated from this lawsuit.

9. Plaintiff's claims for punitive damages against the Town of Medley, the City of North Miami Beach, and the Broward County Sheriff are **STRICKEN**.

10. Plaintiff has <u>fourteen (14) days</u> from the date of this Order to file an amended pleading with respect to Counts I, II, III, V, VI, IX, X, XI, XII, XIV, XV, XVIII, XIX, XX, XXI, XXIII, XXIV, XXVII, XXVIII, XXIX, XXX, XXXI, XXXIII, and XXXVI.

11. The stay on discovery is lifted. The parties shall meet to confer regarding discovery issues and submit a joint scheduling report, as previously ordered by the Court, *see* D.E. 5, within twenty-one days of the filing of any amended complaint.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 6th day of September 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record