## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-62278-CIV-ROSENBAUM/SELTZER

RAYMOND HAYDEN,

       Plaintiff,

v.

BROWARD COUNTY, *et al.*,

       Defendants.

_____/

### ORDER ON MOTIONS TO DISMISS

This matter is before the Court upon the Motions to Dismiss filed by all Defendants in this case. ECF Nos. 69, 71, 77, 79, 84, 87. The Court has considered the motions, the parties' briefs, and the Amended Complaint and is otherwise fully advised in this matter. For the reasons set forth below, the Court grants the Motions to Dismiss as to all the Counts in the Amended Complaint, with the exception of Plaintiff's excessive-force claims.

### I. Factual Background

Plaintiff alleges the following facts, which are taken as true for the purpose of analyzing Defendants' respective motions to dismiss. On June 16, 2009, the "Money Laundering Task Force," a criminal task force organized under the auspices of the United States Internal Revenue Service ("IRS"), engaged in an undercover operation in Broward County, Florida. ECF No. 68 at ¶ 24. Joel Chades, an officer with the Medley Police Department and member of the task force, parked his vehicle in the driveway of an abandoned house in the Shangri-La at Woodmont housing community. *Id.* at ¶ 29.

A resident of the community noticed that Chades had been parked in the same spot for

approximately ninety minutes and placed a call to police requesting their assistance.  *Id.* at ¶ 30.  An officer responded and confirmed that Chades was an undercover law-enforcement officer, but no one ever informed the resident.  *Id.* at ¶ 33.  The resident then contacted Plaintiff Hayden, who was the president of the community homeowners' association, and asked him to investigate the situation.  *Id.*

Hayden approached Chades's vehicle and inquired about Chades's identity.  *Id.* at ¶ 41.  Chades was dressed in plain clothes with nothing visibly identifying him as law enforcement.  *Id.* at ¶ 43.  In response to Hayden's inquiry, Chades produced his IRS identification.  *Id.*  Hayden alleges that he believed that the IRS identification "looked bogus" and remarked to Chades that it looked "like an 8th grader made it on a color copier."  *Id.*

Chades then summoned Humberto Suarez, a Broward County Sheriff's Deputy and  task-force member on his radio, shouting "Bert, come here! Bert, come here! I have a problem."  *Id.* at ¶¶ 16, 43.  Hayden and Chades engaged in a somewhat heated exchange, at which point Hayden reached into his front left pocket to remove his cellular telephone.  *Id.* at ¶ 44. As Hayden motioned towards his pocket, Chades yelled at Hayden to keep his hands away from his pockets and in Chades's view.  *Id.*  Hayden blatantly ignored Chades's warning and retrieved his telephone from his pocket, anway, telling Chades that he intended to call the police.  *Id.*

As Hayden was about to dial, Suarez arrived on the scene in an SUV, wearing plain clothes.  *Id.* at ¶ 45.  Suarez immediately warned Hayden that he and Chades were going to arrest Hayden for disrupting their ongoing police investigation.  Hayden also asserts that Suarez flipped open a wallet containing "some kind of pointed badge."  *Id.*  Nevertheless, Hayden claims that he remained skeptical that the two men were law-enforcement officers.  *Id.* at ¶ 46.  Hayden made a call to 911

asking that a marked unit come to the scene  *Id.*  A portion of the transcript reads,

| | |
|---|---|
| 911: | 911, what is your emergency? |
| Hayden: | Yea, I got two cops on my property threatening me with, with arresting me and stuff! |
| . . . | |
| Hayden: | . . . I want some serious shit here, I'm pressing charges against these fucking cops—if they're really cops! |
| 911: | Ok, what, what did they — |
| Hayden: | You better fucking get somebody here quick! |
| 911: | — say why they were there sir? |
| Hayden: | Yea, now they're asking me for my ID and shit! |

*Id.*

During the telephone call, in addition to requesting Hayden's identification, the officers twice commanded Hayden to put his hands on the officers' vehicle.  *See id.*  Hayden, whose agitation at the time is reflected in the 911 transcript as alleged in the Amended Complaint, did not heed these directives.  Once Hayden hung up, Hayden states that Suarez again asked to see his driver's license. *Id.* at ¶ 48.  Hayden complied with Suarez's request.  *Id.* at ¶ 49.  At that point, Hayden contends, Defendant Arturo Jinete, an officer with the Medley Police Department and a member of the task force, arrived on the scene, also in plain clothes.  *Id.* at ¶ 50.

From the moment that Hayden initially approached Chades, Hayden, who was licensed by the State of Florida to carry a concealed weapon, was wearing a fanny pack that contained a concealed firearm.  *Id.* ¶ 38.  Some time after Jinete's arrival, Suarez asked Hayden if he was carrying a gun in his fanny pack.  *Id.* at ¶ 51.  Hayden answered in the affirmative and showed Suarez his concealed-weapons permit.  *Id.*  Suarez then asked Hayden to relinquish the fanny pack containing the firearm. *Id.* at ¶ 52.  Before releasing the snap of the belt on the fanny pack, however, Hayden admits that he first reached for his camera case, which was attached to the belt of the fanny

pack, purportedly to protect his camera from falling to the ground. *Id.* at ¶ 54. Without waiting for Hayden to fully comply with Suarez's request, Hayden contends, the officers immediately "threw [him] violently to the ground" and secured the pack and gun *Id.* at ¶¶ 55, 57.

After the fanny pack was secured, Hayden again called 911 requesting police assistance. *Id.* at ¶ 61. During the call, Hayden told the operator that three police officers had thrown him to the ground and that the officers had told him that they were "doing some kind of confidential big time drug dealer bust." *Id.* Hayden requested that the operator send a "real cop," and not "these yahoos in unmarked vehicles." *Id.*

Although somewhat unclear, it appears that while Hayden was on the phone with the 911 operator, a uniformed deputy arrived on the scene, as well as Defendant Gregory Tamburo, a North Miami Beach police officer and member of the task force. *Id.* at ¶ 62. Hayden does not allege whether Tamburo arrived in plain clothes or in uniform. According to Hayden, Suarez then issued a Notice to Appear to Hayden, charging him with resisting an officer without violence, in violation of Section 843.02, Fla. Stat. *Id.* at ¶ 63. Hayden was not taken into custody.

Hayden alleges that Chades, Suarez, Tamburo, and Jinete "pressed" the State Attorney to prosecute the charge against him. *Id.* at ¶ 68. The state entered a *nolle prosequi* on April 6, 2010. *Id.* at ¶ 70.

## II. Procedural Background

On September 6, 2013, the Court granted all of the Defendants' Motions to Dismiss, dismissing all of the Counts in Plaintiff's Complaint for failure to state a claim. *See* ECF No. 65. The Court nonetheless permitted Plaintiff to amend his claims, and Plaintiff subsequently filed his Amended Complaint.

4

Plaintiff's Amended Complaint [ECF No. 68] is composed of twenty-four Counts. Counts I, VII, XIII, and XIX assert claims against the individual officers under 42 U.S.C. § 1983 for constitutional violations carried out in their capacities as state law-enforcement officers. Counts II, VIII, XIV, and XX allege claims against the individual officers in their capacities as federal task-force members under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] In each of these eight counts, Plaintiff contends that the individual Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments by illegally seizing and detaining him, utilizing excessive force, and persisting in malicious prosecution of him. *See* ECF No. 68, ¶¶ 82, 87, 130, 135, 181, 186, 232, 237.

In Counts III, IX, XV, and XXI, Plaintiff makes common-law false-arrest and false-imprisonment claims against the individual Defendants. Counts IV and X levy common-law false-arrest and false-imprisonment claims against the Town of Medley, apparently on a *respondeat superior* theory, for the actions of Chades and Jinete, respectively. Count XVI pleads similar claims against the City of North Miami Beach based on Tamburo's conduct. And Count XXII makes the same claim against Broward County Sheriff Scott J. Israel, in his official capacity, for Suarez's actions.

Counts V, XI, XVII, and XXIII assert common-law malicious-prosecution claims against the

---

[1] In actuality, Plaintiff also asserts his federal-officer claims under § 1983. As the Court already stated in its previous Order, however, § 1983 applies only to individuals acting under color of state law, while *Bivens* claims may be made against individuals acting under color of federal law. *See* 42 U.S.C. § 1983; *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1993). Although Plaintiff failed to amend these Counts to reflect claims under *Bivens*, because the substantive law under § 1983 and *Bivens* is generally the same, *see Topping v. U.S. Dep't of Ed.*, 510 F. App'x 816, 818 (11th Cir. 2013) (citations omitted), the Court again treats Plaintiff's claims against Defendants as federal officers as though they were pled under *Bivens*.

individual Defendants for their conduct as state officers.  Counts VI, XII, XVIII, and XXIV set forth common-law malicious-prosecution claims against the United States based on the respective individual Defendants' conduct as federal officers.

Each of the Defendants has moved to dismiss all of the claims on a variety of grounds.[2]  In the course of briefing these motions, Plaintiff has conceded that his claims for attorney's fees contained in Counts XV, XVI, XVII, XXI, XXII, and XXII should be stricken.  Plaintiff also agrees that Defendant Broward County should be dismissed because Plaintiff has brought no claims against it and only inadvertently included the county in the caption of the Amended Complaint.

### III. Legal Standards

### A. Applicable Standard on a Motion to Dismiss Under Rule 12(b)(6), Fed. R. Civ. P.

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain

---

[2] The relevant motions include the following: ECF No. 69 (Scott J. Israel and Suarez); ECF No. 71 (Broward County); ECF No. 77 (United States); ECF No. 79 (Chades, Jinete, and Tamburo); ECF No. 84 (the City of North Miami Beach and Tamburo); ECF No. 87 (the Town of Medley).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Applicable Standards for Qualified Immunity

Qualified immunity protects government officials who perform discretionary functions by shielding them from civil liability as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188,

7

1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  The protection applies "regardless of whether the government official's error is a 'mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations omitted).

Not only does qualified immunity provide protection from liability, but it also endows officials with protection from suit. *Lee*, 284 F.3d at 1194 (citation omitted).  Therefore, a court must ascertain the validity of a qualified-immunity defense "as early in the lawsuit as possible." *Id.*  To obtain qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority when the alleged violation occurred.  *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).  If the defendant satisfies this requirement, the plaintiff must demonstrate that qualified immunity is inappropriate. *Id.*

To determine whether qualified immunity exists, a court must evaluate whether a plaintiff has alleged a violation of a constitutional right and whether the right at issue was clearly established at the time of the official's alleged conduct.[3] *See, e.g., Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010).  If no constitutional violation has been alleged or the allegedly violated right was not clearly established, the government official is entitled to qualified immunity.  *See Pearson*, 555 U.S. at 232.

## IV. Discussion

### A.  Plaintiff's Constitutional Claims

As noted above, Plaintiff has alleged eight constitutional counts against Chades, Jinete, Tamburo, and Suarez: one § 1983 claim and one *Bivens* claim against each of the four individual

---

[3] A court is no longer required to conduct these inquiries in a particular sequence. *Pearson*, 555 U.S. at 227.

Defendants for their conduct in their capacities as state law-enforcement officers and federal task-force members, respectively.  Each of the eight counts includes the same claims: an illegal-arrest claim, an excessive-force claim, an unlawful-seizure claim, and a malicious-prosecution claim.[4] *See generally* ECF No. 68.

To state a claim for violation of rights under § 1983, "a plaintiff must show that the violative conduct was committed by a person acting under color of state law and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Loren v. Sasser*, 309 F.3d 1296, 1303 (11th Cir. 2002) (citations and internal quotations omitted).  To state a claim under *Bivens*, a plaintiff similarly must demonstrate that "'federal officers, acting under color of federal law,' acted unconstitutionally." *Salazar v. U.S. Att'y Gen.*, 476 F. App'x 383, 385 (11th Cir. 2012) (quoting *Abella*, 63 F.3d at 1065).

1. Plaintiff Fails to State a Claim for Unlawful Arrest

An individual's right to be free from unreasonable seizures under the Fourth Amendment is violated when a law-enforcement officer arrests the individual without probable cause.  *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010).  Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (citations and internal quotation marks omitted).  An officer has probable cause to arrest when the arrest is "objectively reasonable based on the totality of the

---

[4] Because Plaintiff also asserts federal malicious-prosecution claims against the United States and state malicious-prosecutions claims against the individual Defendants, the Court addresses all of the malicious-prosecution claims together in Section III.D.

circumstances." *Id.*  An officer is not required, however, "to prove every element of a crime before making an arrest." *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007).  The existence of probable cause is an "absolute bar" to an action for false arrest under § 1983. *Myers*, 713 F.3d at 1328 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

To receive qualified immunity, as noted above, a defendant law-enforcement officer must establish that he was acting within his discretionary authority when the wrongful act occurred.  *See Lee*, 284 F.3d at 1194.  Here, Plaintiff does not dispute that the individual Defendants were acting within the scope of discretionary authority when they arrested and charged him with violating Florida law.  Accordingly, Plaintiff bears the burden of demonstrating that qualified immunity does not apply in this instance.  *Id.*

When, as here, probable cause is the key issue, "all that is required for qualified immunity to be applicable to an arresting officer is '*arguable* probable cause to believe that a person is committing a particular public offense.'" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (emphasis in original) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998)).  Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1144 (11th Cir. 2007) (citation and internal quotation marks omitted).  Demonstrating arguable probable cause does not require an arresting officer to prove every element of the charged crime. *Scarbrough*, 245 F.3d at 1302-03.

In this case, Plaintiff was charged with violating Section 843.02, Fla. Stat., which provides, in relevant part, that

> [w]hoever shall resist, obstruct, or oppose any officer as defined in s.

> 943.10(1) . . . or other person . . . in the lawful execution of any legal
> duty, without offering or doing violence to the person of the officer,
> shall be guilty of a misdemeanor of the first degree . . . .

To establish a violation of this provision, the state must demonstrate that (1) the officer was engaged in the lawful execution of a legal duty, and (2) the action by the individual charged constituted obstruction or resistance of the lawful duty. *H.A.P. v. State*, 834 So. 2d 237, 238 (Fla. 3d DCA 2002) (citing *Slydell v. State*, 769 So. 2d 667, 671 (Fla. 4th DCA 2001)). Florida courts have also required the state to prove that an offender had knowledge of the officer's status as a law-enforcement official in order to sustain a conviction under Section 843.02. *See Polite v. State*, 973 So. 2d 1107, 1113-14 (Fla. 2007) (citations omitted).

The Court previously permitted Plaintiff to amend his Complaint, in part, because Plaintiff did not state in his original Complaint in what respect, if any, Plaintiff resisted, obstructed, or opposed an officer. *See* ECF No. 65 at 16. Plaintiff has now corrected this deficiency and asserts that the basis for the charge was Plaintiff's "refus[al] to relinquish his firearm in his pouch when Suarez asked for it." ECF No. 68 at ¶ 64.

Plaintiff's Fourth Amendment false-arrest claim, in turn, hinges on his assertion that the individual Defendants lacked probable cause to arrest and charge him under the Florida statute.[5]

---

[5] Plaintiff alternatively argues that the probable-cause analysis does not apply here because the officers were motivated by personal animus when they arrested him. In support of this position, Plaintiff relies on *Motes v. Myers*, 810 F.2d 1055 (11th Cir.), in which the Eleventh Circuit noted that § 1983 contemplates a cause of action "for false arrest and imprisonment motivated by the desire to settle a personal dispute." But *Motes* merely emphasized the circumstances under which a private actor may be considered to be acting under color of state law for purposes of § 1983's state-action requirement. It does not stand for the proposition that a law-enforcement officer's personal motivations replace the inquiry into whether probable cause existed for the arrest. Even if Plaintiff were correct, no indication exists in the Amended Complaint that the individual Defendants harbored any personal animosity towards him. Moreover, as discussed *infra*, probable cause for the arrest clearly existed under Plaintiff's

Plaintiff appears to challenge the existence of probable cause based on the obstruction and knowledge elements of Section 843.02.  In particular, Plaintiff asserts that probable cause was lacking because the officers knew that Plaintiff was unaware that they were law enforcement, and the officers did not give Plaintiff sufficient time to comply with their request to relinquish his firearm before arresting him.  But even when viewed in the light most favorable to Plaintiff, the factual allegations in the Amended Complaint support a finding of probable cause.

In its previous Order, the Court expressly found that probable cause existed on the face of the Complaint to charge Plaintiff with resisting an officer, with respect to Suarez's command that Plaintiff turn over the firearm.  The additional factual allegations in the Amended Complaint do not alter this conclusion.  As noted previously, probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Myers*, 713 F.3d at 1328.  Moreover, there is arguable probable cause when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Skop*, 485 F.3d at 1144.

Here, based on the facts alleged in the Amended Complaint, the officers knew that Plaintiff approached them.  *See* ECF No. 68 at ¶ 41.  They knew that they had identified themselves to Plaintiff as law-enforcement officers by showing Plaintiff official identification and notifying him that they were in the middle of an undercover investigation.  *See id.* at  ¶¶ 43, 45.  The officers further knew that Plaintiff acted in a manner that suggested that Plaintiff unreasonably purported not

---

version of the incident.

12

to believe what the officers had said about their identities and that Plaintiff would not leave the scene. *See id.* at ¶ 46. And, significantly, the officers heard Plaintiff himself refer to the officers as "two cops" and "these fucking cops" to the 911 operator, no less, before he claimed not to know that the officers were in fact officers. Plaintiff was also consistently uncooperative, and he ignored multiple commands of the officers, including commands to leave the area because he was interfering with a police investigation, to keep his hands away from his pockets and in the officer's sight, to put his hands on the officers' vehicle (twice), and to show the officers his driver's license. *See id.* at ¶¶ 44, 46, 48. The officers were futher aware that Plaintiff was armed with a firearm. *See id.* ¶ 51. Based on these circumstances, the officers were faced with an obstreperous individual armed with a dangerous weapon.

Suarez asked Plaintiff to turn over the weapon in Plaintiff's possession, an objectively reasonable request made in order to protect the safety of himself, his colleagues, Plaintiff, and the general public, under the circumstances. Instead, Plaintiff reached for a closed case on the fanny pack—a closed case that the officers reasonably could have believed contained another firearm or other weapon. Under these circumstances, the officers were reasonably not required to wait *any* length of time for Plaintiff to accede to their safety instruction when they were faced with an armed individual who already had proven belligerent to their authority. *Cf. Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007); *McQueen v. Johnson*, 506 F. App'x 909, 916 (11th Cir. 2013); *see generally United States v. Lewis*, 674 F.3d 1298, 1308-09 (11th Cir. 2012) (noting the unusual precautions that are warranted by the dangers firearms pose to law-enforcement officers).

The factual allegations as a whole reveal that it was reasonable for the officers to believe that Plaintiff was about to resist Suarez's command. Indeed, Plaintiff was demonstrably hostile towards

the officers' authority and had repeatedly refused the officers' previous commands.  Moreover, contrary to Plaintiff's assertion that he immediately complied with the officers' request to turn over his firearm, Plaintiff admits that he first grabbed his camera case before releasing the snap of the belt of his fanny pack.  This delay, coupled with the fact that Plaintiff was uncooperative and armed, sufficiently supports the existence of probable cause.

In short, the totality of the circumstances here easily supports the existence of probable cause. Moreover, the officers were under no obligation to prove every element of the crime—particularly mental-state elements—or investigate every possible defense before making an arrest.  *Jordan*, 487 F.3d at 1355-56; *Durruthy*, 351 F.3d at 1088-89; *United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983); *see also McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) ("[W]hen an officer has evidence that a defendant has engaged in conduct proscribed by law . . . he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial.").  Accordingly, under the facts and circumstances as alleged in the Amended Complaint, Defendant officers had probable cause, and certainly arguable probable cause, to arrest Plaintiff for violating Section 843.02.

<u>2. Plaintiff Fails to State a Claim for Unlawful Seizure</u>

Plaintiff contends that the individual Defendants unlawfully seized his firearms in violation of the Fourth Amendment.  In support of this claim, Plaintiff states only that  "one of the uniformed deputies who arrived on the scene . . . secured, with no legal basis and with the Defendant officers' knowledge and approval, firearms from [Plaintiff's] house."  ECF No. 68 at ¶ 65.  This allegation is insufficient to state a claim against the individual Defendants.

First, the Amended Complaint asserts that *another* uniformed deputy—not

14

Defendants—seized Plaintiff's firearms from his home.  Second, Plaintiff's general, conclusory allegation that the officers knew and approved of this alleged seizure does not give rise to a plausible inference that Defendants committed a constitutional violation.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Here, Plaintiff provides no factual support for his contention that Defendants knew of and approved of the alleged seizure of his firearms.  And to the extent that Plaintiff predicates his claim on Defendants' vicarious liability over the uniformed officer's conduct, that claim is foreclosed.  *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1321 (11th Cir. 2007) ("We do not recognize vicarious liability . . . in § 1983 actions.").  For these reasons, Plaintiff's unlawful seizure claims must be dismissed.

### 3.  Plaintiff Sufficiently States a Claim for Excessive Force

Plaintiff's Amended Complaint alleges that Chades, Jinete, Tamburo, and Suarez violated his rights under the Fourth Amendment by "using excessive force in the course of seizing, detaining and/or arresting" him.  *See, e.g.*, ECF No. 68 at ¶ 82(b).  In describing the officers' use of force, Plaintiff states that the officers threw him "violently to the ground" and "beat on him for no reason."  *Id.* at ¶¶ 55, 58.  Plaintiff also points to the transcript of a 911 call from one of the neighbors who witnessed the incident.  During the call, the neighbor notified the 911 operator of a fight, stating that she saw Plaintiff being thrown to the ground and "getting punched."  *Id.* at ¶ 59.

The Fourth Amendment's prohibition against unreasonable seizures provides protection against the use of excessive force by law-enforcement officers during the course of a lawful arrest, investigatory stop, or "other 'seizure' of a free citizen."  *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Zivojinovich v. Barner*, 525 F.3d 1059, 1071-73 (11th Cir. 2008).  "When properly stated,

an excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).

The inquiry into whether any given use of force is "reasonable" under the Fourth Amendment is an objective one that requires a careful balancing of "the nature and quality of the intrusion" and the "countervailing governmental interests at stake." *Graham*, 490 U.S. at 396-97 (citations and internal quotation marks omitted). Evaluating an excessive-force claim requires "careful attention to the facts and circumstances of each particular case," including, among other things, the relationship between the need for force and the amount used and the extent of the injury inflicted. *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)).

On the face of the Amended Complaint, Plaintiff has alleged sufficient facts to state a plausible Fourth Amendment excessive-force claim. The Court previously dismissed this claim because Plaintiff's conclusory assertion that the officers "beat on" him did not contain enough facts to determine whether the officers' use of force was excessive. Although Plaintiff again contends generally that the officers "beat" him, the inclusion of the neighbor's 911 call, which indicates that the officers punched Plaintiff for a period, is sufficiently precise to pass muster, in view of Plaintiff's allegations that he did not physically resist in any way. While it was reasonable to use a certain amount of force to subdue Plaintiff and secure his firearm, *see Woods v. City of Plantation*, No. No. 04-60025-CIV, 2008 WL 763788, at *9 (S.D. Fla. Mar. 19, 2008), punching Plaintiff while he was already on the ground and under control, if true, may constitute a higher degree of force than was necessary to achieve the officers' aims. *See, e.g.*, *Denmark v. Lee Cnty*, 931 F. Supp. 831, 836 (M.D.

Fla. 1996) ("[O]nly that force which is reasonably necessary to defend against bodily harm while making the arrest is justified.").  Taking the factual allegations as true and viewing them in the light most favorable to Plaintiff, the Amended Complaint adequately alleges that the officers' force was gratuitous, and therefore, not objectively reasonable under the circumstances.  *See Hadley*, 526 F.3d at 1330 ("[E]xcessive force is judged solely on an objective basis.").  Accordingly, Defendants' Motions to Dismiss are denied as to Plaintiff's Fourth Amendment excessive-force claims.

### B.  Plaintiff's Common-Law False-Arrest Claims Against the Individual Officers in Their State Capacities

In Counts III, IX, XV, and XXI, Plaintiff alleges that Chades, Jinete, Tamburo, and Suarez committed the common-law tort of false arrest, also known as false imprisonment.[6]  Chades, Jinete, and Tamburo do not appear to have not submitted any argument regarding these counts.  Defendant Suarez, on the other hand, has set forth arguments regarding the false-arrest claim.  To the extent applicable, the Court applies these arguments to the other officers, in the interest of judicial economy.  In brief, Suarez contends that the common-law claim for false arrest should be dismissed because probable cause existed to make the arrest.

To state a common-law claim for false arrest under Florida law, Plaintiff must demonstrate that he was unlawfully restrained, without legal authority, against his will.  *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing *Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944)); *see also Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So.2d 1266, 1268-69 (Fla. 4th DCA 2006).  A warrantless arrest without probable cause is unlawful.  *See Case v. Eslinger*, 555 F.3d

---

[6] In Florida, common-law "false arrest" and "false imprisonment" are different labels for the same cause of action.  *See Rankin v. Evans*, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998) (citing *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1164 n.1 (Fla. 3d DCA 1981)).

1317, 1326-27 (11th Cir. 2009).

Plaintiff alleges in his common-law false-arrest claims that his arrest was unlawful because the criminal offense with which he was charged was not supported by probable cause. *See, e.g.*, ECF No. 68 at ¶ 93. As discussed in detail above, however, the factual allegations in the Amended Complaint indicate that probable did exist to arrest Plaintiff. Therefore, Counts III, IX, XV, and XXI must be dismissed.

### C. Plaintiff's False Arrest Claims Against the Town of Medley, the City of North Miami Beach, and Scott J. Israel

In Counts IV and X, Plaintiff asserts his common-law false-arrest claims against the Town of Medley based on the conduct of Chades and Jinete, respectively, in their state capacities. Count XVI makes the same claim against the City of North Miami Beach for the conduct of Tamburo, and Count XXII makes the same claim against Broward County Sheriff Scott J. Israel for the conduct of Suarez. Each of these counts is identical to the corresponding counts levied against the individual officers. Again, as the Court has already determined the existence of probable cause—at least as alleged on the face of the Amended Complaint—these Counts must be dismissed as well.[7]

### D. Plaintiff's Common-Law Malicious-Prosecution Claims Against the United States and Against the Individual Officers for Conduct in Their State and Federal Capacities

In Counts V, XI, XVII, and XXIII, Plaintiff alleges that Chades, Jinete, Tamburo, and Suarez committed the common-law tort of malicious prosecution by virtue of their conduct as state law-enforcement officers. Counts VI, XII, XVIII, and XXIV similarly assert malicious-prosecution

---

[7] In its Motion to Dismiss, the City of North Miami Beach also seeks dismissal on the grounds that Plaintiff has failed to establish municipal liability under *Monell v. Dep't of Social Servs.*, 435 U.S. 658 (1978). But *Monell* applies only to municipal liability under § 1983. Here, Plaintiff has asserted only a common-law tort claim against the city. Accordingly, the city's *Monell* analysis is not relevant.

claims against the United States by virtue of the respective officers' conduct as federal employees. Because Plaintiff fails to state a claim for malicious prosecution under either state or federal law, these Counts must be dismissed.

Under Florida law, a plaintiff must establish six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002)).  To establish a federal malicious-prosecution claim under § 1983, a plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures, in addition to the elements of the common-law tort of malicious prosecution. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

Here, Plaintiff's state and federal malicious-prosecution claims fail because Plaintiff has not established the absence of probable cause.  To the contrary, the factual allegations in the Amended Complaint indicate that Defendants had probable cause to arrest and charge Plaintiff with violating § 843.02, Fla. Stat.  Because Plaintiff fails to satisfy the requisite elements of a common-law malicious-prosecution claim, both the federal and state causes of action fail, and Counts V, XI, XVII, XXIII, VI, XII, XVIII, and XXIV are dismissed.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1.      Defendants Scott J. Israel and Humberto Suarez's Motion to Dismiss [ECF No. 69] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

2.      Defendant Broward County's Motion to Dismiss [ECF No. 71] is **GRANTED**;

3.      Defendant United States's Motion to Dismiss [ECF No. 77] is **GRANTED** as set forth herein.

4.      Defendants Joel Chades, Arturo Jinete, and Gregory Tamburo's Motion to Dismiss [ECF No. 79] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

5.      Defendants City of North Miami Beach and Gregory Tamburo's  Motion to Dismiss [ECF No. 84] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

6.      Defendant Town of Medley's Motion to Dismiss [ECF No. 87] is **GRANTED** as set forth herein.

7.      All Counts of the Amended Complaint are **DISMISSED** except for Counts I, II, VII, VIII, XIII, XIV, XIX, and XX, as they pertain to Plaintiff's excessive-force claims only.  The remaining constitutional claims within those Counts are dismissed.

8.      Plaintiff's claims attorneys fees in Counts XV, XVI, XVII, XXI, XXII, and XXIII are **STRICKEN**.

9.      Plaintiff's Motion for Hearing [ECF No. 102] is **DENIED AS MOOT**.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 9th day of May 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record